Shawn Kolitch, OSB No. 063980
Email: shawn@kolitchromano.com
KOLITCH ROMANO LLP
520 SW Yamhill Street, Suite 200
Portland, Oregon 97204
Telephone: (503) 994-1650

*Attorneys for Plaintiff*
*International Gold Star, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **INTERNATIONAL GOLD STAR, INC.**, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>**GLOBAL IMPORTING GROUP, INC.**, an Oregon corporation,<br><br>Defendant. | Case No. 3:20-cv-00197<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT**<br><br>(Unfair Competition; False Designation of Origin; Passing Off; False Advertisement; Common Law Trademark Infringement; Unjust Enrichment)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, International Gold Star, Inc. ("Gold Star" or "Plaintiff"), files this Complaint against the Defendant, Global Importing Group, Inc. ("Global" or "Defendant"), and alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff is the exclusive authorized distributor in the United States of certain beverage products manufactured in Ukraine by Carlsberg Ukraine, bearing the trademark "Kvas Taras". Kvas Taras is a type of "kvas" – a traditional Slavic and Baltic beverage commonly made

from rye bread. The beverage is popular among individuals of Eastern European ancestry and is commonly sold in stores catering to those individuals.

## NATURE OF THE CASE

2.      This is a civil action for trademark infringement and unfair competition under the Lanham Act (15 U.S.C. § 1051, *et. seq.*) and Oregon common law arising from the deliberate use by Defendant of the Kvas Taras trademark to falsely label and market goods which were not manufactured, intended or authorized for distribution or sale in the United States.

3.      By this action, Plaintiff seeks to redress the wrongs occasioned by the Defendant's false designation of origin, false advertisement, false description and dilution, unfair competition, and other illegal and wrongful acts. Defendant has imported with an intent to distribute, and has distributed, certain diverted "grey market" beverage products that have been adulterated and mislabeled and, as such, are illegal to sell in the United States.

4.      Defendant's acts have harmed consumers who mistakenly believed that they purchased the highest quality products that they associate with the well-known brand when they, in fact, purchased materially different products through unapproved distribution channels. Moreover, on information and belief, the products distributed by Defendant are alcoholic beverages within the meaning of 27 U.S.C. § 214, although not labeled as such, in violation of 27 U.S.C. § 215, and the sale of such products harms the general public.

5.      Kvas Taras, manufactured in Ukraine, is made in factories owned by Carlsberg Ukraine, which is part of Carlsberg Group, one of the world's largest manufacturers of beer and soft drinks. Carlsberg Ukraine manufactures different types of beer as well as soft drinks, such as Kvas Taras.

6.      The association with the world-renown brand, Carlsberg, is extremely important to the success of Kvas Taras, since consumers associate this ethnically-specific product with the reliability and recognition of the parent company, Carlsberg, which has been in business since 1847.

7.      Kvas Taras products are sold worldwide, including in the United States. Carlsberg Ukraine has chosen one of the oldest and most respected importers of ethnic Eastern European products, Gold Star, to be its exclusive importer into, and authorized distributor of, Kvas Taras in the United States.

8.      On April 10, 2012, Carlsberg Ukraine registered a trademark, Reg. No. 4,123,729, with the United States Patent and Trademark Office; specifically, the word mark in Cyrillic with the English transliteration "Kvas Taras," covering non-alcoholic beverages.

9.      Carlsberg Ukraine has developed a line of Kvas Taras products specifically for exporting into the United States. These products include Kvas Taras as well as Kvas Taras Dark.

10.     Kvas Taras products intended for export to the United States are bottled in bottles of certain shape and has labels of certain type. Moreover, at least one type of Kvas Taras products approved for import into the United States has received Kosher certification and bears the Kosher Certification seal that is widely recognized, thus rendering Kvas Taras acceptable in the United States for Kosher observers.

11.     The labeling on the product specifically includes the statement that the exclusive importer of Kvas Taras in the United States is Gold Star.

12.     Over many years of cooperation with Carlsberg Ukraine, Gold Star has developed a reputation among consumers as a reliable, responsible distributor who can be trusted to adhere to the highest standards in product handling and quality control. Through close cooperation with

Carlsberg Ukraine, Gold Star has carefully cultivated this relationship for many years. Carlsberg Ukraine and Gold Star's reputation is presently in danger of being destroyed by the named Defendant, which has imported, and may continue to import and distribute products that will likely cause consumer confusion and harm the goodwill of Gold Star.

13.     On information and belief, Defendant obtained Carlsberg Ukraine products from sources that are outside the only distribution channel approved by Carlsberg Ukraine. Carlsberg Ukraine and Gold Star take great care to ensure that the genuine Carlsberg Ukraine products are shipped to the United States under certain conditions designed to maintain their quality and integrity. With diverted Carlsberg Ukraine products, like the ones sold by Defendant, neither Carlsberg Ukraine nor Gold Star, has any assurances that such products are being handled and stored under safe conditions. Defendant attempted to flood the United States market with products that are not intended for distribution in the United States, were mislabeled as non-alcoholic when they were, in fact, alcoholic beverages, that were warehoused in foreign facilities not registered by the FDA, that were materially different from the ones approved for import into the United States, that were mislabeled, and that were not transported to the United States under acceptable temperature- and humidity-controlled conditions.

14.     As will be further alleged in this Complaint, Carlsberg Ukraine products intended for export to the United States are materially different from those that are manufactured for domestic consumption and export to other countries but diverted to the United States – the so-called "grey market" Kvas Taras products.

15.     Defendant's unauthorized importation and subsequent distribution has caused consumer confusion, mistake, and deception to the detriment of Carlsberg Ukraine, Gold Star, and consumers. As a result of Plaintiff's extensive branding, marketing, sales, and quality control

efforts in the United States, consumers in the United States expect a certain quality, packaging, and overall image from Kvas Taras-branded products. When such consumers encounter the diverted products, which bear certain of Carlsberg Ukraine's trademarks but are materially different from what U.S. consumers expect, they are likely to be confused.

16.     Defendant's importation and sales of diverted products have caused great damage to Gold Star.

## THE PARTIES

17.     Plaintiff Gold Star, Inc. is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York. Gold Star is the exclusive importer of Kvas Taras products into the United States.

18.     On information and belief, Defendant Global Importing Group, Inc. is a corporation organized and existing pursuant to the laws of the State of Oregon, with its principal place of business in Portland, Oregon. Global is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

19.     At all relevant times, Global has maintained an interactive website, http://globalimportinggroup.com/. Global's website contains sections called "catalog" and "order". Upon information and belief, at times relevant to this litigation, the "catalog" section of Global's website listed non-genuine Kvas Taras as an item available for purchase from Global, and the "order" section permitted website users from Oregon to purchase products from Global's website. Global also maintains a detailed and comprehensive "Contact Us" form, available at http://globalimportinggroup.com/contact-page-2/, where users from Oregon can inquire about purchasing products from Global.

20.     Upon information and belief, Global purchases products from, and sells products to, Oregon wholesalers.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338. This Court also has jurisdiction pursuant to 15 U.S.C. § 1121 because this action arises, in part, under 15 U.S.C. §§ 1114 and 1125.  This Court has jurisdiction over Gold Star's related common law claims pursuant to 28 U.S.C. § 1338, because these claims are joined with substantial and related claims under federal trademark law, and pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

22.     The amount of damages at issue exceeds $75,000, exclusive of interest and costs.

23.     This Court has personal jurisdiction over Defendant because, on information and belief, Defendant is headquartered and incorporated in this judicial district, solicits and conducts business within this judicial district, and advertises and offers goods and services, which are the subject of the claims in this action, to customers and/or potential customers in this judicial district and directly or through others have offered and sold their goods and services to customers in this judicial district, and such exercise of personal jurisdiction over Defendant comports with the laws of the State of Oregon and the constitutional requirements of due process.

24.     Venue is proper in the judicial district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this judicial district, maintains its principal place of business in this judicial district, is incorporated in this judicial district, and because a substantial part of the events or omissions giving rise to Gold Star's claims in this action occurred in this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *Carlsberg Ukraine and Gold Star's Business*

25.     Private Joint Stock Company Carlsberg Ukraine ("Carlsberg Ukraine") is a company with its principal office in Zaporizhzhia, Ukraine. Carlsberg Ukraine is part of Carlsberg Group, one of the world's largest manufacturers of beer and soft drinks.

26.     Carlsberg Ukraine manufactures different types of beer, as well as non-alcoholic soft drinks such as Kvas Taras.

27.     Kvas Taras is a type of "kvas" – a traditional Slavic and Baltic beverage commonly made from rye bread. The beverage is popular among individuals of Eastern European and Baltic ancestry, and is commonly sold in ethnic stores catering to those individuals.

28.     Carlsberg Ukraine's Kvas Taras products are among the most popular Kvas products in the United States.

29.     Kvas Taras enjoys a worldwide reputation for quality, great taste and attractiveness of its packaging design, and stands out among similar products by other manufacturers. Carlsberg Ukraine enjoys a particularly strong reputation in the United States among immigrants from the former Soviet Union and Eastern European countries. Carlsberg Ukraine develops, manufactures, and markets products that are familiar to these immigrants by catering their preferences and tastes.

30.     Gold Star is one of the oldest and most reputable suppliers and importers of Eastern European specialty foods in the United States. Gold Star has been in business since 1981, and has acquired stellar reputation in Russian, Eastern European, Middle Eastern, Asian, Kosher and Natural/Organic market segments.

31.     Carlsberg Ukraine has, in cooperation with Gold Star, developed several Kvas products specifically for the United States market. These products are distinctly packaged, are

particularly suited to the tastes of U.S. consumers, and comply in all respects with all U.S. laws and regulations. The particular brand of Kvas that Carlsberg Ukraine has produced for the United States market is Kvas Taras in distinctive bottles and bearing factory labels that are printed at least partially in English.

32.     The information and nutritional label of the best-selling type of Kvas Taras developed for the United States, namely, regular Kvas Taras, is printed in both English and Hebrew. The product is Kosher, which is confirmed by the Kosher Certification that appears pre-printed on the label. The production and expiration date under United States standards is pre-printed on the cap of each bottle.

33.     The Kvas Taras products that Carlsberg Ukraine manufactures for the United States market and sells through Gold Star all bear the distinct trademark "Kvas Taras" or "Квас Тарас" (in Cyrillic).

34.     Genuine Kvas Taras destined for export into the United States is packaged as follows and has the following label:



35.    Kvas Taras products are often the number one choice among consumers who are looking to purchase "kvas" and similar beverages in ethnic stores in the United States. Consumers know that when they choose Kvas Taras products, they can be assured they are buying the highest-quality kvas-type beverages.

36.    Due to the highly perishable nature of Kvas Taras products, it is critical that Kvas Taras products are transported to the United States and stored, after leaving the factory, under specific temperature- and humidity-controlled conditions.

37.    Moreover, certain types of Kvas Taras products, such as Kvas Taras White, have a very limited shelf life – only four months. Kvas Taras White, therefore, is only suitable for sale in Ukraine and adjoining countries where it can be expeditiously transported. For that reason, Gold Star does not import Kvas Taras White into the United States.

38.    For approximately eight years, Gold Star has been the exclusive importer of Kvas Taras products into the United States. Carlsberg Ukraine and Gold Star have signed an exclusive distributorship agreement whereby Gold Star was named the exclusive distributor of Kvas Taras products in the United States.

39.    Pursuant to the distributorship agreement, Gold Star must purchase and distribute at least a certain minimum quantity of Kvas Taras in the United States, must engage in marketing and promotion of Kvas Taras, and must adhere to the high standards of storage and handling of Kvas Taras products.

40.    Manufacturers of foreign food and beverage products frequently enter into exclusive distributorship agreements with domestic importers. The foreign manufacturer benefits from the domestic distributor's marketing efforts and customer support, while the domestic

distributor benefits from better access to the product and an exclusive relationship with the manufacturer. These exclusive relationships are often common knowledge among importers.

41.     The product and nutritional label of Kvas Taras products intended for export to U.S. explicitly states "**Exclusive Importer in the US**: International Gold Star, Inc." The statement identifying Gold Star as the exclusive distributor is printed on the factory wrapper of each authorized bottle of Kvas Taras, rather than on a sticker that many importers apply to factory packaging of imported products. This significantly improves the reputation and recognition of Gold Star as the entity inseparably associated with Kvas Taras in the eyes of U.S. consumers. Furthermore, this labeling indicates that other distributors cannot plausibly claim ignorance regarding the exclusive Kvas Taras U.S. distribution arrangement between Gold Star and Carlsberg Ukraine.

42.     Gold Star works closely with Carlsberg Ukraine on developing the best ways to market Kvas Taras products in the United States. Gold Star is instrumental in Carlsberg Ukraine's efforts to present its products for the United States market, including ethnic and mainstream products.

43.     Gold Star has spent considerable efforts and made enormous investments of time and money in promoting Kvas Taras products in the United States. Gold Star routinely studies the tastes of United States consumers and works with Carlsberg Ukraine to tailor Kvas Taras products accordingly, participates in numerous exhibitions, presentations and sample sales, develops marketing materials together with Carlsberg Ukraine, cultivates relationships with local stores and their proprietors, and advertises Carlsberg Ukraine products on radio, television, in print and elsewhere. Gold Star has devoted great attention to ensure that Kvas Taras products are consistently among the best sellers among similar products.

44.     Gold Star is in charge of shipping and importing authorized Kvas Taras products into the United States, storage of the products at its warehouse, and transporting them to hundreds of stores that sell them in temperature-controlled containers. In doing so, Gold Star adheres to the highest standards developed by Carlsberg Ukraine to ensure that the products are not exposed to extreme heat and humidity levels, that they have not expired, and that they are safe for consumers. Gold Star ensures compliance of Carlsberg Ukraine products with all applicable laws and regulations applicable to food products of this type.

45.     Gold Star handles customer relationships for Carlsberg Ukraine in the United States. Gold Star ensures the effectiveness of recalls of Carlsberg Ukraine products, answers customer questions and addresses their concerns, accepts suggestions from customers and transmits them to Carlsberg Ukraine, and replaces products for consumers in the rare instances when products do not meet their expectations. Gold Star carries product liability insurance for the products it distributes.

46.     Gold Star ensures compliance with the U.S. Food and Drug Administration ("FDA") labeling and Prior Notice requirements with respect to Carlsberg Ukraine products. It works with Carlsberg Ukraine to ensure that the label properly and conspicuously lists all required information and that the FDA is duly advised prior to the importation of Carlsberg Ukraine products into the United States.

### *Carlsberg Ukraine's Trademark*

47.     Carlsberg Ukraine has registered the following U.S. Trademark (the "Mark"):

# КВАС ТАРАС

48. The trademark was registered on the Principal Register of the United States Patent and Trademark Office on April 10, 2012, as U.S. Registration Number 4,123,729. A copy of Carlsberg Ukraine's Registration Certificate is attached hereto as Exhibit A.

49. Carlsberg Ukraine has used the Mark in commerce in the United States for at least five years.

50. As indicated in Exhibit A, the transliteration of the Cyrillic characters of the Mark is "KVAS TARAS," and the English translation of the mark is "KVASS TARAS." Accordingly, the Mark covers both the Cyrillic characters and these English equivalents.

51. The sale of Carlsberg Ukraine's products in the United States has been tremendously successful in part due to Gold Star's marketing and promotion of the Carlsberg Ukraine brand throughout the country.

52. Gold Star distributes approximately 200 tons of Kvas Taras every year in the United States alone and, but for Defendant's wrongful acts, would have distributed far more.

53. The Kvas Taras brand is recognized in the United States and throughout the world as associated with high-quality, great-tasting beverages sourced from ecologically pure ingredients. Carlsberg Ukraine goods are sold in grocery stores throughout the United States.

54. As a result of Gold Star's extensive advertising and promotion of Carlsberg Ukraine's goods in connection with, among other things, the KVAS TARAS Mark, Gold Star's widespread and long-running sale of Kvas Taras, and the celebrity that the Mark has achieved, beverage products manufactured by Carlsberg Ukraine and distributed by Gold Star have been and are now recognized by the consuming public in the United States and in the trade as originating exclusively from Carlsberg Ukraine through Gold Star, its exclusive U.S. distributor.

55.     Beverage products bearing the Mark (and/or its English equivalents) have come to be known by the purchasing public throughout the United States and abroad as beverage products of the highest quality. As a result, the Mark and the goodwill associated with it are of inestimable value to Carlsberg Ukraine and Gold Star.

56.     Gold Star has used and is currently using the Mark in commerce and in connection with its sale of Kvas Taras, and plans to continue such use in the future.

### *Defendant Imported Grey Market Kvas Taras*

57.     Upon information and belief, in or about 2017, and possibly earlier, Defendant began importing into the United States a large quantity of unauthorized "grey market" Kvas Taras products.

58.     Upon information and belief, Defendant purchased Kvas Taras from one or more distributors in Ukraine, known as "consolidators." Defendant has offered these products for sale in the United States and actively marketed these products for a period of years.

59.     Kvas Taras products that the Defendant purchased were not authorized by Carlsberg Ukraine to be exported to the United States.

60.     Defendant neither sought nor received consent from Gold Star to distribute Kvas Taras products in the United States.

61.     Upon information and belief, the distributors from which the Defendant purchased its grey market Kvas Taras products were not registered with the FDA in violation of the FDA Food Safety Modernization Act, and the information submitted by the Defendant to the relevant authorities concerning these distributors' FDA registrations and approvals was most likely falsified.

62.     Upon information and belief, Defendant created and placed counterfeit nutritional and packaging label on the diverted Kvas Taras, without Carlsberg Ukraine's or Gold Star's consent and in violation of FDA rules and regulations.

63.     The diverted Kvas Taras beverages and genuine Kvas Taras beverages authorized for sale in the United States are materially different.

### Material Differences between U.S. and Diverted Carlsberg Ukraine Products

64.     Upon information and belief, Defendant acquired Kvas Taras products from distributors in Ukraine in contravention of official and sanctioned distribution channels and imported them into the United States. In doing so, the Defendant violated several FDA regulations, as well as caused consumer confusion and permanent damage to Carlsberg Ukraine's and Gold Star's goodwill and reputation.

65.     Defendant imported into the United States products that were not intended for the United States, but rather were intended for domestic consumption in Ukraine and adjoining countries. Kvas Taras destined for the United States and those intended to be sold in other countries are materially different in terms of packaging, labeling, and quality. Defendant attempted to deceive U.S. consumers that the diverted Kvas Taras goods are U.S.- approved products distributed through official distribution channels, and in doing so has perpetuated fraud upon consumers and violated federal statutes and FDA regulations.

66.     27 U.S.C. § 214 defines an "alcoholic beverage" as "any beverage in liquid form which contains not less than one-half of one percent of alcohol by volume and is intended for human consumption."

67.     27 U.S.C. § 215 sets forth mandatory labeling requirements for alcoholic beverages.

68.     27 U.S.C. § 218 provides for a civil penalty for violation of the labeling law "of not more than $10,000, and each day shall constitute a separate offense."

69.     Defendant has imported and sold in the United States diverted Kvas Taras that is an alcoholic beverage, not labeled as such, in violation of 27 U.S.C. §§ 214-215.

70.     Because kvas is generally produced using the same equipment as beer, significant quantities of alcohol may infiltrate kvas following production of beer batches when the equipment is not thoroughly cleaned or evacuated of beer prior to production of kvas batches.

71.     The process of producing Kvas Taras destined for export to the United States differs materially from the process of producing Kvas Taras for domestic consumption and sale in other countries in that, among other things, prior to producing Kvas Taras destined for the United States, the manufacturer takes extra measures to evacuate all leftover beer from its equipment prior to running so-called "Scheduled Export Bottlings".

72.     Diverted Kvas Taras has not undergone the alcohol removal process and, consequently, contains alcohol significantly in excess of what is permissible by law for non-alcoholic beverages.

73.     Upon information and belief, all diverted Kvas Taras distributed by the Defendant is in violation of 27 U.S.C. §§ 214-215.

74.     Distribution of illegally labeled Kvas Taras is not only in violation of federal laws, but also harms the general public and significantly tarnishes the reputation of Gold Star and Carlsberg Ukraine.

75.     Carlsberg Ukraine manufactures products for export into the United State and for domestic consumption. Even though these products are manufactured in the same facilities, these products are different in many respects in terms of handling and packaging.

76.     One difference between the genuine, U.S.-destined Kvas Taras products and those diverted by Defendant is that the Kvas Taras products authorized for export to the U.S. include, on their factory-manufactured packaging, a statement that the exclusive distributor in the United States is Gold Star. Diverted Kvas Taras has no such statement.

77.     FDA regulations require that the name, address and phone number of the distributor be prominently featured on imported food products to be distributed in the United States. Defendant's diverted Kvas Taras products violate these regulations.

78.     Moreover, diverted Kvas Taras is bottled in different bottles than Kvas Taras authorized for sale in the United States.

79.     Diverted Kvas Taras has different packaging labels than products authorized for sale in the United States. Specifically, the packaging labels are in the Ukrainian language, and feature different artwork than what is used on the authorized Kvas Taras.

80.     Upon information and belief, Defendant imported into the United States and has distributed a category of Kvas Taras product that has neither been authorized for export into the United States, nor is imported into the United States by Gold Star, namely, Kvas Taras White.

81.     To circumvent FDA regulations and deceive consumers, upon information and belief, Defendant placed counterfeit labels on its diverted Kvas Taras products. Without authorization from Carlsberg Ukraine or Gold Star, Defendant placed substandard-looking labels that diminish the look of the packaging and misstate the ingredients, nutritional facts, and falsify expiration dates of Kvas Taras products.

82.     The facilities that manufacture Carlsberg Ukraine products in Ukraine for export to the U.S., as well as Gold Star's facilities, are all registered with the FDA.

83.     Upon information and belief, Defendant obtained diverted Kvas Taras from distributors in Ukraine, known as "consolidators," in contravention of the only official Carlsberg Ukraine distribution channel – Gold Star. Upon information and belief, the consolidators, which store and handle Carlsberg Ukraine products subsequently sold to the Defendant, have never been registered with the FDA.

84.     Upon information and belief, Defendant has transported and handled Carlsberg Ukraine products in violation of the strict standards that Carlsberg Ukraine has established for its U.S.-authorized Kvas Taras products.

85.     Deviation from acceptable handling methods causes irreversible damage to the Kvas Taras product, and may even result in it being unsafe for consumption. As a result, the products that the Defendant has introduced into the stream of commerce are materially different from the genuine Kvas Taras products.

86.     Another critical difference between the genuine product destined for distribution in the United States and those diverted by the Defendant is that the genuine products are kosher while the diverted products are not.

87.     Kvas Taras that is authorized for sale in the United States contains a well-known Kosher designation.

88.     The kosher status of genuine Kvas Taras is essential to many consumers who are observant Jews.

89.     Many consumers who purchase Kvas Taras may be confused into believing that the diverted Kvas Taras is kosher, just like the genuine Kvas Taras is, and mistakenly consume such products.

90.     Therefore, the Defendant has misled and confused consumers by attempting to pass diverted Carlsberg Ukraine products as approved U.S. products, and in doing so has caused irreparable and monetary harm to Carlsberg Ukraine and Gold Star.

## FIRST CLAIM FOR RELIEF

**(False Designation of Origin, Passing Off, Unfair Competition and False Description in Violation of 15 U.S.C. § 1125(a))**

91.     Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth herein.

92.     Defendant has, without authorization, imported into the United States and/or distributed and/or sold in the United States and/or received in interstate commerce, diverted Kvas Taras products featuring the Mark, which are materially different from Kvas Taras goods authorized by Carlsberg Ukraine for sale in the United States. Such use of the Mark is likely to cause confusion, or to cause mistake, and/or to deceive, as to the affiliation, connection or association of Defendant with Carlsberg Ukraine or Gold Star, or as to the origin, sponsorship or approval by Carlsberg Ukraine or Gold Star of Defendant's diverted Kvas Taras goods and the commercial activities related to Defendant's diverted Kvas Taras goods.

93.     Defendant's acts constitute a false representation and a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

94.     Defendant has also violated 15 U.S.C. 1125(a)(1)(B) by importing, falsely labeling, and distributing diverted Kvas Taras products, not intended for the U.S. market, thereby misrepresenting the nature, characteristics, qualities, and/or geographic origin of Defendant's goods, services, or commercial activities.

95.    Defendant's acts have been committed with knowledge of Gold Star's exclusive U.S. common law rights and goodwill in the Mark, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

96.    Gold Star has suffered great and irreparable injury, loss, and damage to the goodwill associated with the Mark and Gold Star's status as the exclusive distributor of Kvas Taras, and has suffered damages in an amount to be established at trial.

97.    Gold Star has no adequate remedy at law.  Unless Defendant is preliminarily and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use of the Mark on grey market goods not intended for sale in the U.S., Gold Star will continue to suffer irreparable harm in for form at least of loss of control over the goodwill associated with Gold Star's exclusive right to use the KVAS TARAS mark on U.S. products. Accordingly, Gold Star is entitled to injunctive relief under 15 U.S.C. § 1116 restraining Defendant, its officers, agent, employees, and all other persons acting in concert with them, from engaging in any further acts of unfair competition, false designation of origin, passing off and false description in violation of the Lanham Act.

98.    Pursuant to 15 U.S.C. 1117(a), Gold Star is entitled to recover damages it has sustained and will sustain as a result of Defendant's wrongful conduct, and the gains, profits, and advantages that Defendant has obtained by reason of its wrongful conduct described herein.

99.    Defendant's conduct makes this an exceptional case under 15 U.S.C. § 1117(a), entitling Gold Star to an award of attorneys' fees and costs.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### (Federal Trademark Infringement in Violation of 15 U.S.C. § 1114)

100.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth herein.

101.    Defendant has used KVAS TARAS in commerce in the United States without authorization.

102.    KVAS TARAS is the English equivalent of KBAC TAPAC, which is registered on the Principal Register of the United States Patent and Trademark Office in connection with identical goods for which Defendant is using the mark.

103.    Defendant acted with knowledge and intent in selling unauthorized goods under the mark KVAS TARAS.

104.    As a direct and proximate result of Defendant's actions, Gold Star has been damaged, will continue to be damaged, and has been and will continue to be caused irreparable injury unless Defendant is enjoined by this Court.

## THIRD CLAIM FOR RELIEF

### (Trademark Infringement, False Advertising and Unfair Competition Under Oregon Common Law)

105.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth herein.

106.    Defendant's acts constitute common law trademark infringement, false advertising and unfair competition, and will continue to create a likelihood of confusion or to deceive the purchasing public and others, whereby they would be led to mistakenly believe that Defendant is

affiliated with, related to, sponsored by, or connected with Gold Star, or authorized to import and distribute Kvas Taras products in the United States, unless restrained by this Court.

107.    Defendant has acted with full knowledge of Gold Star's use of, and statutory and common law rights to, the KVAS TARAS mark in the United States, and without regard to the likelihood of confusion of the public created by its activities.

108.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the KVAS TARAS mark to the great and irreparable injury of Gold Star.

109.    As a result of Defendant's acts, Gold Star has suffered damages in an amount not yet determined or ascertainable.  At a minimum, however, Gold Star is entitled to injunctive relief, an accounting of Defendant's profits, and recovery of Gold Star's damages and costs.

110.    In view of the deliberately fraudulent and malicious use of KVAS TARAS without authorization and in conjunction with various false labeling practices intended to deceive consumers, and the need to deter Defendant from similar future conduct, Gold Star is entitled to punitive damages.

## <u>FOURTH CLAIM FOR RELIEF</u>

### (Unlawful Trade Practices in Violation of ORS §§ 646.605 *et. seq.*)

111.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth herein.

112.    Defendant has been passing of its goods as authorized for the U.S. market by Carlsberg Ukraine and thus as the goods of Gold Star, the only authorized U.S. distributor, causing a likelihood of confusion or misunderstanding as to the source, sponsorship or approval of

Defendant's products, or causing a likely of confusion as to Defendant's affiliation, connection or association with Gold Star, and/or otherwise damaging the public.

113.    Defendant's conduct constitutes unfair and deceptive acts or practices in the course of business, trade or commerce in violation of Oregon's Unlawful Trade Practices Act, ORS §§ 646.605 *et. seq.*

114.    Defendant's unauthorized use of confusingly similar imitations of the KVAR TARAS Mark without authorization, and in conjunction with Defendant's false labeling, has caused and is likely to continue causing substantial injury to the public and to Gold Star, and Gold Star is entitled to injunctive relief and to recover damages, costs and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Unjust Enrichment)

115.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth herein.

116.    As a result of committing the acts alleged herein, Defendant has willfully infringed Gold Star's rights in the KVAS TARAS mark for its own purposes and, as a direct and proximate result of its improper acts, Defendant has been unjustly enriched.

117.    Gold Star has suffered, and will continue to suffer, loss of profits by virtue of Defendant's conduct, and Defendant's improper acts have caused and are continuing to cause irreparable injury to the reputation and goodwill that Gold Star has established over the years.

118.    Gold Star is therefore entitled to an award of Defendant's unjust profits and Gold Star's lost profits.

## JURY DEMAND

119.    Pursuant to Fed. R. Civ. P. 38(b), Gold Star hereby demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

WHEREFORE, Gold Star respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above, and award it relief, including but not limited to the following:

1.    An Order entering judgment in favor of Plaintiff against the Defendant, declaring that the Defendant's use of the KVAS TARAS mark in the United States without authorization constitutes infringement of Gold Star's rights in the KVAS TARAS mark as well as unfair competition, false designation of origin, passing off and false advertising under federal and/or state law, as detailed above;

2.    A permanent injunction enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, wholesale customers, and all persons in active concert or participation with any of them:

    a.    From using the KVAS TARAS mark in any form in the United States, including in connection with any other wording or designs, without express authorization from Gold Star or Carlsberg Ukraine;

    b.    From using any other marks, logos, designations, or indicators of source that are confusing similar to the KVAS TARAS mark on or in connection with the manufacturing, distribution, advertisement, offering for sale, or sale of any goods or services;

    c.   From importing any Kvas Taras product into the United States that was not intended for the U.S. market, and/or from relabeling or mislabeling any such unauthorized Kvas Taras product to make it appear that it was intended for the U.S. market;

    d.   From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant are associated or connected in any way with Gold Star or Carlsberg Ukraine, are approved by Gold Star or Carlsberg Ukraine, or are sponsored by or affiliated with Gold Star or Carlsberg Ukraine;

    e.   From otherwise competing unfairly with Gold Star; and

    f.   From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a)-(e) above.

3.    An Order directing Defendant, pursuant to 15 U.S.C. § 1118, to destroy all products, packaging, labels, tags, wrappers, receptacles, signs, advertisements, promotional materials, websites, and/or any other materials and things that contain or bear any of the designations the use of which is enjoined under the injunctions prayed for herein;

4.    An Order directing Defendant to disseminate pre-approved corrective advertising, and send pre-approved letters to all customers, resellers, retailers, agents, partners, and/or representatives to address the likely confusion caused by Defendant's unauthorized use of the KVAS TARAS mark or any confusingly similar variation thereof;

5.    An Order directing Defendant, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve upon counsel for Gold Star, within thirty (30) days after the service on Defendant of the injunctions prayed for herein, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunctions;

6.      An Order requiring Defendant to account for and pay to Gold Star any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws;

7.      An Order requiring Defendant to pay Gold Star damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

8.      An Order requiring Defendant to pay Gold Star all of its litigation expenses, including reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws; and

9.      Any other and further relief as the Court may deem just and proper.

 DATED this 5th day of February, 2020.

Respectfully submitted,

KOLITCH ROMANO LLP

By   s/ Shawn Kolitch
     Shawn Kolitch, OSB No. 063980
     Email: shawn@kolitchromano.com
     520 SW Yamhill Street, Suite 200
     Portland, Oregon 97204
     Telephone: (503) 994-1650

     *Of Attorneys for Plaintiff*
     *International Gold Star, Inc.*